UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
NATIONAL OIL WELL MAINTENANCE CO. : **MEMORANDUM**
and ENTERPRISE TRADING LIMITED, : **AND ORDER**
:
Plaintiffs, : 02 CV. 7666 (LBS)
:
-v.- :
:
FORTUNE OIL & GAS, INC., FORTUNE SHIP :
MANAGEMENT LTD. and INDO-PACIFIC :
RESOURCES (JAVA) LTD., :
:
Defendants. :
------------------------------------------------------------x

SAND, District Judge.

This matter is before the Court on cross-motions regarding the law to be applied to Defendant Fortune's remaining counterclaims. For the reasons set forth below, National Oil Well's (NOWMCO's) motion to apply the law of England is denied. Fortune's motion to apply the law of British Columbia to its breach of contract counterclaim is also denied. The Court shall apply the law of New York to both the breach of contract and promissory estoppel counterclaims.

**I. Background**

This case stems out of a loan agreement between Fortune and NOWMCO. That loan agreement contains a provision that calls for the application of English law. Applying English law, this Court previously granted Plaintiff NOWMCO summary judgment on its claim of breach of promissory notes. Solely remaining are Fortune's counterclaims on the issues of breach of contract and promissory estoppel, the former of which survived summary judgment on the theory that a remediation agreement may have

1

existed "subsequent to and in addition to the loan agreement." Now, the parties disagree as to which law governs these surviving counterclaims.

**II. Discussion**

A. NOWMCO's Motion

NOWMCO argues that English law should govern Fortune's breach of contract and promissory estoppel counterclaims.

A federal court sitting in diversity must apply the choice of law rules of the state in which it is located. Hartford Fire Ins. Co. v. Orient Overseas Containers Lines Ltd., 230 F.3d 549, 556 (2d Cir. 2000) (citing Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 497 (1941)).

In New York, the first question to resolve in determining whether to undertake a choice of law analysis is whether there is an actual conflict of laws. Curley v. AMR Corp., 153 F.3d 5, 12 (2d Cir. 1998) (citing In re Allstate Ins. Co., 613 N.E.2d 936 (N.Y. 1993)). An actual conflict is one that could "have a significant possible effect on the outcome of the trial." Id.; see also Pescatore v. Pan Am. World Airways, Inc., 97 F.3d 1, 14 (2d Cir. 1996) (actual conflict found where different substantive rules exist). Where there is no actual conflict between the potentially applicable bodies of law, the court should dispense with the choice of law analysis and apply the law of the forum, id., even when a dispute is governed by a contract containing a choice of law provision. Blue Ridge Farms, Inc. v. Crown Equip. Corp., 2005 U.S. Dist. LEXIS 7217 (E.D.N.Y. Mar. 31, 2005) (citing Maalouf v. Salomon Smith Barney, Inc., 2004 U.S. Dist. LEXIS 17873 (S.D.N.Y. Sept. 8, 2004)). See also IBM v. Liberty Mut. Fire Ins. Co., 363 F.3d 137 (2d

Cir. 2004) ("Choice of law does not matter … unless the laws of the competing jurisdictions are actually in conflict.").

*1. Breach of Contract*

NOWMCO argues that contract formation rules in England are different than the rules in New York. Under English law, NOWMCO contends that the alleged remediation agreement does not qualify as a valid contract and that plaintiffs are therefore entitled to judgment on the pleadings as to the breach of contract counterclaim. In particular, NOWMCO argues that the supposed remediation agreement is invalid under English law because it was not signed by the party to be charged and lacks a completeness of terms. Fortune counters that there is no difference between the law of England and the law of New York and that the court may therefore dispense with choice of law analysis.

Under both New York law and English law, a contract is formed when all of the contracting parties express an intent to be bound and where all of the essential terms of the agreement have been spelled out. Int'l Minerals & Res., S.A. v. Pappas, 96 F.3d 586, 593 (2d Cir. 1996); see also HALSBURY'S LAW OF ENGLAND § 3(2)(ii) 632 (4th ed. 2004); ROY M. GOODE, FORMATION OF CONTRACTS AND PRECONTRACTUAL LIABILITY 54 (1990) ("essential terms must be stated or ascertainable"). Under English law, intent to be bound is determined by reviewing the parties' conduct and the documentation alleged to represent their agreement, CHITTY ON CONTRACTS, §2.145-§2.148 (28th ed. 1999), while certainty of terms means that the *essential* terms must be agreed upon. PETER SHEARS & GRAHAM STEPHENSON, JAMES' INTRODUCTION TO ENGLISH LAW 223 (1996) (citing Sweet and Maxwell Ltd. v. Universal News Serv.. Ltd., 1964 2 Q.B. 699 (Eng. C.A.)). Not

3

every term need be finalized. Id.; see also CHITTY ON CONTRACTS, §2.104 (28th ed. 1999) (citing First Energy Ltd. v. Hungarian Int'l Bank Ltd., 2 Lloyd's Rep. 195, 205 (C.A. 1993) for proposition that agreement may be complete even though not worked out in meticulous detail). Further, failure to sign a memorandum of agreement does not generally defeat contract formation under English law. See Pappas, 96. F.3d at 593 (citing Ateni Mar. Corp. v. Great Marine Ltd., 2 Lloyd's Report 250, 254 (Q.B. 1990) (signing of memorandum of agreement found not to be condition precedent to contract)); see also CHITTY ON CONTRACTS, §4.038 (28th ed. 1999) (requirement that document be "signed by party to be charged" only applicable to contracts affecting interests in land).

In short, the rules for contract formation are substantially similar under English law and New York law. Where, as here, Fortune argues that a contract existed on the basis of its acceptance of an offer outlining a detailed work program, schedule, and budget, and that performance commenced pursuant to the contract, there is no actual conflict between the law of England and the law of New York. Accordingly, a choice of law analysis is unnecessary, and New York law shall govern the breach of contract counterclaim. The absence of particular terms in the alleged agreement is an issue that NOWMCO may argue to the jury in its attempt to show that there was no meeting of the minds.

However, even if the Court's failure to find an actual conflict is incorrect, NOWMCO's motion should still be denied pursuant to a choice of law analysis.

NOWMCO argues that English law governs in the event of an actual conflict, because the pre-existing loan agreement between the parties contains an English choice

4

of law provision and Article 5 of that loan agreement envisions the creation of a remediation program.

Nonetheless, the theory on which this counterclaim survived summary judgment was not a breach of the loan agreement, but the breach of a remediation agreement that may have existed subsequent to and in addition to the loan agreement. To be sure, it is the policy of the courts of New York to enforce choice-of-law clauses, provided that the law chosen has a reasonable relationship to the agreement and does not violate a fundamental public policy of New York. Finucane v. Interior Constr. Corp., 695 N.Y.S.2d 322, 324 (N.Y. App. Div. 1999). The question here, however, is whether this choice of law clause from one agreement extends to a new and independent agreement that grew out of the parties' previous relationship.

Whether a choice of law clause in a contract governs claims related to but beyond the contract appears to depend in part on the breadth of the clause. See, e.g., Pall Mall Corp. Hospitality, Inc. v. Gage Mktg. Group, 2000 U.S. Dist. LEXIS 17038 (S.D.N.Y. 2000) (declining to extend choice of law clause in contract to unfair trade practices tort claim); Schuster v. Dragone Classic Motor Cars, Inc., 67 F. Supp. 2d 288, 290 (S.D.N.Y. 1999) (effect of governing law clause depends on its breadth). New York has not adopted the California rule that broadly construes contractual choice-of-law provisions to apply to causes of action arising from or *related to* a contract. Compare Gen. Signal Corp. v. MCI Telecomm. Corp., 66 F.3d 1500, 1506 (9th Cir. 1995) (statement of California rule) with Roundout Valley Cent. Sch. Dist. v. Coneco Corp., 339 F. Supp. 2d 425, 440 (N.D.N.Y. 2004) (court not bound to choice of law clause where issue is collateral to contract containing the provision). Here, the scope of the choice of law

clause is limited, explicitly governing only "this agreement and the additional security documents."

Further, in general where courts have applied the choice of law clause of an original contract to a subsequent agreement, the new agreement has been one that modified or discharged an obligation under the original agreement. See, e.g., BII Fin. Co. v. U-States Forwarding Serv. Corp., 115 Cal. Rptr. 2d 312, 322 (Cal. Ct. App. 2002) (choice of law clause in bill of lading applied to interpretation of possible accord and satisfaction); Eldon Indus, Inc. v. Paradies & Co., 397 F. Supp. 535 (N.D. Ga. 1975) (accord and satisfaction should be decided in accordance with the choice of law made in an underlying contract). Moreover, even under such circumstances, a number of courts have rejected application of a choice of law clause to the new agreement. See, e.g., Trilogy Dev. Group, Inc. v. Teknowledge Corp., 1996 Del. Super. LEXIS 342 (Aug. 20, 1996) ("For the most part, [courts applying law of underlying contract to an accord and satisfaction] have applied the law of the chosen forum to subsequent agreements on a *pro forma* basis, with little or no legal analysis on the choice of law issue."); W. Branch Holding Co. v. Trans Mktg. Houston, Inc., 722 F. Supp. 1339 (E.D. Va. 1989) (choice of law provision of underlying contract does not govern accord and satisfaction, which is an independent agreement).

Where, as here, the alleged new agreement did not alter the terms of the underlying contract but merely grew out of a pre-existing relationship between the parties, and the choice of law provision is narrow in scope, there is insufficient justification for it to be controlling.

As no choice of law clause governs, the next step under New York choice of law analysis would be to undertake a "grouping of contacts" or "center of gravity" analysis to determine the jurisdiction with the most significant relationship to the transaction and the parties. IBM, 363 F.3d at 143 (citing Zurich Ins. Co. v. Shearson Lehman Hutton, Inc., 642 N.E.2d 1065 (N.Y. 1994)); In re Allstate Ins. Co., 613 N.E.2d at 936. The Restatement enumerates five generally significant contacts in a contract case: the place of contracting, negotiation, and performance; the location of the subject matter of the contract; and the domicile of the contracting parties. 19A NY JUR, CONFLICT OF LAWS 37 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (2)).

With respect to the remediation agreement at issue here, the place of contracting was British Columbia, while the place performance and the location of the oil wells that were the subject of the contract was Indonesia. Meanwhile, the parties are domiciled in British Columbia (Fortune) and Qatar (NOWMCO). England, however, lacks any significant connection to the remediation agreement. As a result, NOWMCO's motion to apply English law to the breach of contract counterclaim would fail under a New York choice of law analysis.

*2. The Promissory Estoppel Claim*

NOWMCO also seeks to apply English law to Fortune's promissory estoppel counterclaim. On this issue NOWMCO is correct that an actual conflict exists between the law of New York and the law of England. Under English law, the theory of promissory estoppel is recognized only as a "shield" to defend against a claim and not as a "sword" to form the basis of a cause of action. Combe v. Combe, 1951 2 K.B. 215

(Eng. C.A.); see also Nike Int'l v. HDS Mfg., Mktg., and Distrib., 1989 U.S. Dist. LEXIS 9868 (D. Or. Aug. 17, 1989) (promissory estoppel not recognized as claim in England); Chemical Bank v. Washington Pub. Power Supply Sys., 691 P.2d 524, 541 (Wa. 1984) (promissory estoppel limited to use as defense in England).

In light of the actual conflict, NOWMCO argues that the English choice of law clause in the loan agreement should govern the promissory estoppel claim. However, promissory estoppel, by definition, is a claim outside the contract, and therefore, the parties' choice of law is not binding. NCC Sunday Inserts, Inc. v. World Color Press, Inc., 759 F. Supp. 1004 (S.D.N.Y. 1991). Hence, under New York law, the law of the jurisdiction with the most significant contacts is the law that applies. Id. (citing Index Fund, Inc. v. Ins. Co. of N. Am., 580 F.2d 1158, 1162 (2d Cir. 1978)).

Here, the pertinent promise by Enterprise to provide remediation services was made in New York, while Indonesia was the place of detrimental reliance. While the place of detrimental reliance is sometimes seen as the most important factor in a choice of law analysis involving a promissory estoppel claim, see, e.g., NCC Sunday Inserts, Inc., 759 F. Supp. at 1011, here neither party advocates application of the law of Indonesia, and the Court is under no obligation to make a determination of foreign law based on its own research. Loebig v. Larucci, 572 F.2d 81, 85 (2d Cir. 1978). Accordingly, New York law shall apply to the promissory estoppel counterclaim.

B. Fortune's Motion

Fortune moves to establish the law of British Columbia as the law to be applied to its breach of contract counterclaim. Fortune concedes, however, that there is no

8

difference between the law of British Columbia and the law of New York on the contract formation issues pertinent here. Where there is no actual conflict, courts are free to dispense with the choice of law analysis and apply New York law. IBM, 363 F.3d at 137. Accordingly, Fortune's motion to apply British Columbia law to the breach of contract counterclaim is denied.

### III. Conclusion

For the reasons set forth above, NOWMCO's motion to apply English law to Fortune's surviving counterclaims is denied. Fortune's motion to apply the law of British Columbia to the breach of contract counterclaim is also denied.

SO ORDERED.

Dated:   New York, New York
         May 11, 2005

_____
U.S.D.J.